UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

*CR 15-329 JNE/FLN*

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **INDICTMENT** |
| | ) |
| Plaintiff, | ) (18 U.S.C. § 371) |
| | ) (18 U.S.C. § 554) |
| v. | ) (18 U.S.C. § 1001) |
| | ) (18 U.S.C. § 1956) |
| 1. **GREEN WAVE** | ) (18 U.S.C. § 2) |
| **TELECOMMUNICATION, Sdn Bhn,** | ) (50 U.S.C. § 1705(c)) |
| | ) |
| 2. **ALIREZA JALALI, and** | ) |
| | ) |
| 3. **NEGAR GHODSKANI,** | ) |
| a/k/a Negar Kani, | ) |
| | ) |
| Defendants. | ) |

THE UNITED STATES GRAND JURY CHARGES THAT:

At all times relevant to this Indictment:

## INTRODUCTORY ALLEGATIONS

### A.   Defendants and Relevant Entities

1.      Defendant **GREEN WAVE TELECOMMUNICATION, Sdn Bhn,** ("defendant **GREEN WAVE**") is a Malaysian company with its principal place of business located in Kuala Lumpur, Malaysia.  Defendant **GREEN WAVE** acquires sensitive export controlled technology from the United States on behalf of an Iranian company located in Tehran, Iran ("Iranian Company 1").

2.      Iranian Company 1 specializes in broadcast communications, microwave communications, and government communications.  Iranian Company #1 also designs and produces digital video broadcasting equipment and supplies microwave radio

SCANNED

DEC 0 8 2015

U.S. DISTRICT COURT ST. PAUL

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

systems and wireless broadband access in Iran. Iranian Company 1 has close commercial relationships with public and government of Iran organizations, including Iran Electronics Industry ("IEI"), Iran Communications Industry ("ICI"), and the Islamic Republic of Iran Broadcasting ("IRIB"). The United States Department of the Treasury has specifically designated both IEI and ICI as sanctioned entities because both firms are owned or controlled by entities previously designated for their roles in Iran's nuclear and ballistic missile programs. Similarly, the IRIB is on the United States Treasury's Specially Designated Nationals List ("SDN") because it is owned or controlled by the government of Iran, and is an entity responsible for the government's continued abuse of human rights.

3.      Defendant **ALIREZA JALALI** ("defendant **JALALI**"), located in Malaysia, was an employee of defendant **GREEN WAVE**'s Purchasing Department.

4.      Defendant **NEGAR GHODSKANI**, a/k/a "Negar Kani" ("defendant **GHODSKANI**"), located in Iran, was an employee of both defendant **GREEN WAVE** and Iranian Company 1.

5.      Unindicted co-conspirator 1, principally located in Iran, is the CEO of Iranian Company 1 and also represented himself as the Director of defendant **GREEN WAVE** when conducting business with United States-based companies.

6.      U.S. Company 1, located in the State and District of Minnesota, sells sensitive analog devices and related digital communications equipment whose export is controlled for national security purposes.

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

7.      U.S. Company 2, located in the State and District of Massachusetts, sells

sensitive electronic devices and related communications equipment whose export is

controlled for national security purposes.   U.S. Company 2 often conducts business

through an authorized reseller ("U.S. Company 2's Reseller") when orders for U.S.

Company 2's products come from outside the United States.

8.      The United States Department of Homeland Security, Customs and Border

Patrol ("CBP"), and the United States Department of Commerce, Bureau of the Census

("BOC") and Bureau of Industry and Security ("BIS"), are all parts of the executive

branch of the United States government and are responsible for collecting and using

information regarding outbound shipments being sent and exported across the United

States border.  Such information is collected and used for various purposes, including for

statistical purposes, for tax purposes, for screening purposes, to provide proof of export,

to verify and investigate export shipments, for export control and compliance purposes, to

provide to state, local, and foreign governments for various purposes, and in other

circumstances.

**B.      Relevant Legal Provisions**

The International Emergency Economic Powers Act

9.      The export of "commerce controlled" items was regulated by the United

States Department of Commerce ("DOC").   Under the International Emergency

Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 – 1707, the President of the United

States was granted the authority to deal with unusual and extraordinary threats to the

<u>U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.</u>

national security, foreign policy and economy of the United States. Under IEEPA, the President could declare a national emergency through Executive Orders that had the full force and effect of law.

10.     On August 17, 2001, under the authority of IEEPA, the President issued Executive Order 13222, which declared a national emergency with respect to the unrestricted access of foreign parties to United States goods and technologies.  This national emergency has been extended by successive Presidential Notices, the most recent being that of August 7, 2015 (80 Fed. Reg. 48233 (Aug. 11, 2015)), continuing the Export Administration Regulations (15 C.F.R. Parts 730-774) (the "EAR") in effect under IEEPA.  Through the EAR, the DOC imposes license or other requirements before an item subject to the EAR can be lawfully exported from the United States or lawfully re-exported from another country.  These items are listed on the Commerce Control List ("CCL") published at 15 C.F.R. § 774, Supplement No. 1.

11.     Pursuant to its authority derived from IEEPA, the DOC reviewed and controlled the export of certain goods and technology from the United States to foreign countries. In particular, the DOC placed restrictions on the export of goods and technology that it determined could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. Under IEEPA and the EAR, it was a crime to willfully export, or attempt or conspire to export, from the United States any item listed on the CCL requiring an export license without first obtaining an export license from the DOC.

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

See 50 U.S.C. § 1705(c); 15 C.F.R. § 764.2.

12. On December 12, 2012, the United States Department of Commerce issued a certified license determination declaring that, at all times relevant to this Indictment, the Analog-to-Digital Converters, 150 MSPS, 1.8V (part number AD9254BCPZ-150) (hereinafter, "the Converters"), that are the subject of this Indictment, were designated on the Commerce Control List at ECCN 3A001, and were controlled for export from the United States for national security and anti-terrorism reasons.

### The Iranian Transactions and Sanctions Regulations

13. Beginning in 1995, by Executive Orders and pursuant to the authority in IEEPA, the President of the United States imposed such sanctions on Iran. Executive Orders authorized the Secretary of the Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the Executive Orders. Pursuant to this authority, the Secretary of the Treasury has promulgated the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. Part 560, implementing the sanctions imposed by Executive Orders.

14. Under the Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560:

a. Section 560.204 provided that no goods, technology or services may be exported, re-exported, sold, or supplied to Iran, directly or indirectly from the United States or by a United States person, wherever located, without authorization.

5

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

> b.    Section 560.203 prohibited any transaction by any United States person or within the United States that evaded or avoided, or had the purpose of evading or avoiding, causes a violation of, or that attempted to violate, any of the prohibitions set forth in Part 560.

> 15.    At all times relevant to this Indictment, a license was required from the U.S. Department of the Treasury to export to Iran the Converters, Synthesizers, 4/5 Div w/ LD, INV (part number HMC698LP5E) (hereinafter, "the Synthesizers"), and Analog Devices Dual 12-/14-/16-Bit, LVDS Interface, 500 MSPS DACs (part number AD9780BCPZ) (hereinafter, "the Analog Devices").. Additionally, a license was also required from the DOC to export the Converters to Malaysia.

> 16.    The Synthesizers generate a range of frequencies from a single fixed timebase or oscillator.  They are found in many modern devices, including radio receivers, mobile telephones, radiotelephones, walkie-talkies, CB radios, satellite communications systems, and GPS systems. The Analog Devices are monolithic analog-to-digital converters featuring a high performance sample-and-hold amplifier and on-chip voltage reference, and they convert analog signals to digital form.  These items are found in cellular communications networks, instruments, such as scopemeters and oscilloscopes for aerospace applications, and ultrasound devices.  The Converters are electronic devices that convert a digital code to an analog signal such as a voltage, current, or electric charge, and they are used in wireless infrastructure applications and wideband communications.

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

Electronic Export Information

17.     The U.S. Census Bureau ("Census"), DOC, at all times relevant hereto, through the Foreign Trade Regulations ("FTR"), 15 C.F.R. Part 30, required filing of electronic export information ("EEI") through the Automated Export System ("AES"), including through the free internet application AES Direct.  The purpose of the FTR was to strengthen the United States government's ability to prevent the export of certain items to unauthorized destinations and/or end users because the AES aids in targeting, identifying, and when necessary confiscating suspicious or illegal shipments prior to exportation.  15 C.F.R. § 30.1(b).

18.     At all times relevant hereto, EEI was required to be filed for, among other things, (a) all exports subject to the EAR that require an export license, regardless of value or destination; and (b) when the value of the goods being exported exceeds $2,500 per Schedule B or harmonized tariff classification code.  15 C.F.R. §§ 30.1(c), 30.2(a)(1) and 758.1(b).  The EEI filed in AES was required to contain, among other things, the names and addresses of the parties to the transaction, country of ultimate destination, and a description, quantity, and value of the items exported.  15 C.F.R. § 30.6(a).  Prior to October 1, 2008, exporters were required to submit the same information in a paper document called a Shipper's Export Declaration ("SED").  The EEI filed in AES also was required, when applicable, to include the license authority for the export and the Export Control Classification Number assigned to the goods being exported pursuant to the EAR.  Id.

7

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

19.    Any person who knowingly fails to file or knowingly submits false or misleading EEI through AES shall be subject to a fine not to exceed $10,000 per violation or imprisonment for not more than 5 years, or both.  13 U.S.C. § 305.

The Wassenaar Arrangement

20.  The Wassenaar Arrangement ("WA") is an international multilateral export control regime consisting of 41 countries that was established in 1996 and is the successor to the Cold War-era Coordinating Committee for Multilateral Export Controls ("COCOM").  The WA was established by its member countries, including the United States, to contribute to regional and international security and stability, by promoting transparency and greater responsibility in transfers of conventional arms and dual-use goods and technologies.  Participating countries establish their own laws, regulations, and policies, to ensure that transfers of conventional arms and dual-use goods and technologies do not contribute to the development or enhancement of military capabilities which undermine these goals, and are not diverted to support such capabilities.  Representatives of participating countries meet regularly in Vienna, Austria to discuss which military and dual-use items should be added or removed from the WA's List of Dual-Use Goods and Technologies and the Munitions List.  Member countries then generally model their national export control lists after the Wassenaar control lists to regulate the export of items agreed to by the member countries.  At all times relevant to this Indictment, the Converters were on the WA's List of Dual-Use Goods and Technologies.

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

21.    The Grand Jury incorporates by reference and realleges these Introductory

Allegations into each and every count of this Indictment as though fully alleged therein.

## COUNT ONE
(Conspiracy to Defraud the United States and to Commit Offenses
against the United States)

A.    **Objects of the Conspiracy**

1.    Beginning at least as early as in or about August 2010 and continuing to in

or about March 2012, in the State and District of Minnesota, and elsewhere, the

defendants,

**GREEN WAVE TELECOMMUNICATION, Sdn Bhn,**
**ALIREZA JALALI, and**
**NEGAR GHODSKANI,**
a/k/a Negar Kani,

and unindicted co-conspirator 1, and others known and unknown to the Grand Jury,

conspired and agreed with each other to knowingly and intentionally commit offenses

against the United States, namely:

- a.    To defraud the United States by impeding, impairing, obstructing,

and defeating the lawful government functions of various federal agencies, including

CBP, BOC, and BIS, in the ascertainment and collection of customs and export

information, the authority to inspect and examine cargo crossing the United States border,

and the issuance of appropriate licenses that relate to the transfer of goods across the

United States border, in violation of Title 18, United States Code, Section 371, through

deceitful and dishonest means.   Such deceitful and dishonest means used in the

conspiracy included representing to U.S. Company 1 and U.S. Company 2 in e-mail

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

correspondence and documents relating to the purchase, shipment, and export of certain export-controlled communications equipment, and certifying in an end-user declaration, that the export-controlled communications equipment would be used in Malaysia, when defendant **JALALI** and defendant **GHODSKANI** knew and intended that the export-controlled communications equipment would be shipped to Iran;

b. To knowingly and intentionally commit an offense against the United States, specifically to knowingly and willfully falsify, conceal, and cover up by a trick, scheme, and device a material fact, to knowingly and willfully make material false, fictitious, and fraudulent statements and representations, and to knowingly and intentionally make and use a false writing and document knowing it to contain materially false, fictitious, and fraudulent statements and entries, all in a matter within the jurisdiction of the executive branch of the United States government, specifically, the jurisdiction of CBP, BOC, and BIS, and other federal agencies, in violation of 18 U.S.C. § 1001(a); and

c. To knowingly and intentionally commit an offense against the United States, specifically to knowingly and willfully export, attempt to export, and cause to be exported from the United States to Iran export-controlled communications equipment, including the Converters, without obtaining the required licenses or other written authorization from the DOC and the U.S. Department of the Treasury, and enter into transactions within the United States that evaded and avoided, had the purpose of evading and avoiding, caused violations of, and conspired to violate, the regulations

governing trade and exports from the United States to Iran, in violation of 50 U.S.C. § 1705(c), 15 C.F.R. § 746.7, 15 § C.F.R. 764.2, 31 C.F.R. § 560.203 and 31 C.F.R. § 560.204.

**B.      The Means by Which the Objects of the Conspiracy Were to be Accomplished**

The manner and means by which the object of the conspiracy was accomplished included, but was not limited to, the following:

2.      Defendant **JALALI** and defendant **GHODSKANI**, and others known and unknown to the Grand Jury, and as employees of defendant **GREEN WAVE** and Iranian Company 1, conspired to obtain sensitive export controlled digital communications devices and related equipment in the United States to be sent to Iran.   Specifically, defendant **JALALI** and defendant **GHODSKANI**, conspired to obtain the following:

a.      From U.S. Company 1: both the Converters and the Analog Devices; and

b.      From U.S. Company 2 through U.S. Company 2's Reseller: the Synthesizers.

Collectively, the Converters, Analog Devices, and Synthesizers are referred to herein as "the controlled digital communications equipment."

3.      Defendant **GHODSKANI** would communicate directly with U.S. Company 1 and with U.S. Company 2 through U.S. Company 2's Reseller, to determine the availability, price, timing of delivery, and other details for the purchase and export of the controlled digital communications equipment from the United States.   When

communicating with these companies, defendant **GHODSKANI** would represent that she was an employee of defendant **GREEN WAVE** only, located in Malaysia. Specifically, when sending emails to U.S. Company 1 and U.S. Company 2 to purchase sensitive export controlled digital communications equipment, defendant **GHODSKANI,** located in Iran, would use a digital signature that not only stated she worked for **GREEN WAVE** in Malaysia, but also depicted **GREEN WAVE**'s telephone number in Malaysia. Conversely, when sending emails to defendant **JALALI** in Malaysia, defendant **GHODSKANI** would use a digital signature that stated she worked for "Iranian Company 1" and listed both Iranian telephone and facsimile numbers.

4.    Defendant **GHODSKANI** would then transmit a purchase order to U.S. Company 1 and U.S. Company 2 on behalf of **GREEN WAVE** in order to purchase and cause the export of the controlled digital communications equipment from the United States.

5.    Defendant **GHODSKANI** would falsely represent to U.S. Company 1 that the controlled digital communications equipment obtained from U.S. Company 1, specifically, the Converters and Analog Devices, would be used by defendant **GREEN WAVE** in Malaysia, when in fact defendant **JALALI** and defendant **GHODSKANI** both well knew and intended that the these items would be sent to Iran.

6.    Unindicted co-conspirator 1, representing himself as Director of defendant **GREEN WAVE**, would execute an end user declaration in which he falsely certified that the controlled digital communications equipment obtained from U.S. Company 2,

<u>U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.</u>

specifically, the Synthesizers, would be used by defendant **GREEN WAVE** in Malaysia, when in fact defendant **JALALI**, defendant **GHODSKANI**, and unindicted co-conspirator 1, all well knew and intended that the these export controlled items would be sent to Iran.

7.      Defendant **GHODSKANI** would communicate with defendant **JALALI** to obtain payment for the controlled digital communications equipment to be exported from the United States by U.S. Company 1 and U.S. Company 2 to defendant **GREEN WAVE**.

8.      Defendant **GHODSKANI** and defendant **JALALI** would then send, or cause to be sent, payment to U.S. Company 1 and U.S. Company 2 to pay for the purchase and illegal export and smuggling of the controlled digital communications equipment to be exported from the United States to defendant **GREEN WAVE** by U.S. Company 1 and U.S. Company 2.

9.      Defendant **JALALI**, using an international commercial carrier, would then repackage and unlawfully export from Malaysia to Iran the controlled digital communications devices and related equipment that had been exported from the United States to defendant **GREEN WAVE** by U.S. Company 1 and U.S. Company 2.

10.     Defendants **JALALI**, **GHODSKANI**, and unindicted co-conspirator 1 would knowingly fail to apply for a license or authorization to ship the controlled digital communications devices and related equipment to Iran via Malaysia, despite knowing

<u>U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.</u>

that export of the controlled digital communications equipment from the United States for use in Iran without such a license or authorization was prohibited by law.

## C.   Overt Acts

11.   On or about the dates listed below, in furtherance of the conspiracy and to accomplish the objects of the conspiracy, defendants **JALALI**, **GHODSKANI**, and others known and unknown to the Grand Jury, committed various overt acts within the District of Minnesota and elsewhere, including but not limited to the following:

a.   From in or about August 2010 through in or about March 2012, defendant **GHODSKANI** communicated with U.S. Company 1 and U.S. Company 2 to determine the availability, price, timing, and other details for the purchase and export of the controlled digital communications devices and related equipment from the United States.  More specifically and as set forth below:

(1)   On or about January 4, 2011, defendant **GHODSKANI**, representing herself as an employee of defendant **GREEN WAVE** only, communicated with U.S. Company 1 about the timing of a shipment of a quantity of Converters to defendant **GREEN WAVE** in Malaysia.

(2)   On or about April 4, 2011, defendant **GHODSKANI**, representing herself as an employee of defendant **GREEN WAVE** only, communicated with U.S. Company 2's authorized Reseller to obtain price quotes for a quantity of Synthesizers.

<u>U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.</u>

(3) On or about May 23, 2011, defendant **GHODSKANI**, representing herself as an employee of defendant **GREEN WAVE** only, communicated with U.S. Company 2's Reseller to obtain price quotes for a quantity of Synthesizers.

b.  From in or about December 2010 through in or about March 2012, defendant **GHODSKANI** transmitted purchase orders to U.S. Company 1 and U.S. Company 2 on behalf of defendant **GREEN WAVE** in order to buy and cause the export of controlled digital communications equipment from the United States. More specifically and as set forth below:

(4) On or about January 4, 2011, defendant **GHODSKANI**, representing herself as an employee of defendant **GREEN WAVE** only, transmitted a purchase order to U.S. Company 1 for the purchase of a quantity of Converters.

(5) On or about December 28, 2010, defendant **GHODSKANI**, representing herself as an employee of defendant **GREEN WAVE** only, transmitted a purchase order to U.S. Company 1 for the purchase of a quantity of Analog Devices.

(6) On or about April 12, 2011, defendant **GHODSKANI**, representing herself as an employee of defendant **GREEN WAVE** only, transmitted a purchase order to U.S. Company 2's Reseller for the purchase of a quantity of Synthesizers.

CASE 0:15-cr-00329-JNE-KMM   Document 1   Filed 12/08/15   Page 16 of 24

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

(7)     On or about May 28, 2011, defendant **GHODSKANI**, representing herself as an employee of defendant **GREEN WAVE** only, transmitted a purchase order to U.S. Company 2's authorized Reseller for the purchase of a quantity of Synthesizers.

c.     From in or about December 2010 through in or about March 2012, defendant **GHODSKANI** falsely represented to U.S. Company 1 that the Converters and Analog Devices would be used by defendant **GREEN WAVE** in Malaysia. More specifically and as set forth below:

(8)     On or about December 28, 2010, defendant **GHODSKANI**, representing herself as an employee of defendant **GREEN WAVE** only, falsely represented to U.S. Company 1 that the ultimate destination for a quantity of Analog Devices was Malaysia and that the end user of these Analog Devices was "Green Wave Telecommunication."

(9)     On or about January 4, 2011, defendant **GHODSKANI**, representing herself as an employee of defendant **GREEN WAVE** only, falsely represented to U.S. Company 1 that the ultimate destination for a quantity of Converters was Malaysia and that the end user of these Converters was "Green Wave Telecommunication."

(10)     On or about April 25, 2011, unindicted co-conspirator 1, representing himself as an employee of defendant **GREEN WAVE** only, falsely represented to U.S. Company 2 that the ultimate destination for a quantity of

Synthesizers was Malaysia and that the end user of these Synthesizers was "Green Wave Telecommunication."

(11)   On or about June 30, 2011, unindicted co-conspirator 1, representing himself as an employee of defendant **GREEN WAVE** only, falsely represented to U.S. Company 2 that the ultimate destination for a quantity of Synthesizers was Malaysia and that the end user of these Synthesizers was "Green Wave Telecommunication."

d.   From in or about December 2010 through in or about March 2012, defendant **KANI** and defendant **JALALI** sent, or caused to be sent, payment to the U.S. Companies to purchase the controlled digital communications equipment from the United States.  More specifically and as set forth below:

(12)   On or about January 6, 2011, defendant **GHODSKANI** and defendant **JALALI** sent, or caused to be sent, approximately $13,181.90 to a bank account held by U.S. Company 1 to accomplish the purchase and export of a quantity of Analog Devices and other items from the United States to Iran.

(13)   On or about January 14, 2011, defendant **GHODSKANI** and defendant **JALALI** sent, or caused to be sent, approximately $38,248.60 to a bank account held by U.S. Company 1 to accomplish the purchase and export of a quantity of Converters and other items from the United States to Iran.

(14)   On or about July 27, 2011, defendant **GHODSKANI** and defendant **JALALI** sent, or caused to be sent, approximately $7,756.10 to a bank

17

account held by U.S. Company 2 to accomplish the purchase and export of a quantity of Synthesizers from the United States to Iran.

(15)   On or about September 1, 2011, defendant **GHODSKANI** and defendant **JALALI** sent, or caused to be sent, approximately $3,992.60 to a bank account held by U.S. Company 2 to accomplish the purchase and export of a quantity of Synthesizers and other items from the United States to Iran.

e.   From in or about December 2010 through in or about March 2012, defendant **JALALI**, using an international commercial carrier, unlawfully exported, or caused the unlawful exportation of, the controlled digital communications equipment from Malaysia to Iran that had been exported from the United States by U.S. Company 1 and U.S. Company 2.  More specifically and as set forth below:

(16)   On or about February 22, 2011, defendant **JALALI** fabricated, or caused the fabrication of, an invoice depicting the sale of 47 Converters by defendant **GREEN WAVE** to Iranian Company 1 for a price of approximately $12.45, rather than the true cost of $3,480.87.

(17)   On or about March 3, 2011, defendant **JALALI** fabricated, or caused the fabrication of, an invoice depicting the sale of four Analog Devices by defendant **GREEN WAVE** to Iranian Company 1 for a price of approximately $3.24, rather than the true cost of $99.84.

(18)    On or about August 25, 2011, defendant **JALALI** fabricated, or caused the fabrication of, an invoice depicting the sale of a quantity of Synthesizers by defendant **GREEN WAVE**, to Iranian Company 1 for a price of approximately $32.40, rather than the true cost of $3,099.60.

(19)    On or about August 29, 2011, defendant **JALALI** fabricated, or caused the fabrication of, an invoice depicting the sale of a quantity of Synthesizers by defendant **GREEN WAVE**, to Iranian Company 1 for a price of approximately $38.50, rather than the true cost of $7,756.10.

All in violation of 18 U.S.C. § 371.

## COUNT 2
### (Smuggling)

From in or about December 2010, through in or about March 2012, in the State and District of Minnesota and elsewhere, the defendants,

**ALIREZA JALALI** and
**NEGAR GHODSKANI,**
a/k/a Negar Kani,

did, and attempted to, fraudulently and knowingly receive, conceal, buy, and sell and did, and attempted to knowingly facilitate the transportation, concealment, and sale of merchandise, articles, and objects, knowing that they would be intended for exportation contrary to a law and regulation of the United States, that is, Title 50, United States Code, Sections 1705(a) and (c), Title 31, Code of Federal Regulations, Sections 560.203, 560.204, Title 15 Code of Federal Regulations, Section 764.2, all in violation of 18 U.S.C. § 554 and § 2.

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

Specifically defendant **JALALI** and defendant **GHODSKANI** did, aided and abetted, and caused others known and unknown to the Grand Jury to purchase, export, transport, and send from the United States a quantity of Converters, after representing that the ultimate country of destination for the Converters was Malaysia, when in fact defendant **JALALI** and defendant **GHODSKANI** knew that the Converters were intended to be sent to Iran. Defendant **JALALI** and defendant **GHODSKANI** also effected the export of the Converters without applying for and obtaining by such application the necessary license and authorization before sending and exporting the Converters from the United States.

## COUNT 3
(Smuggling)

From in or about December 2010, through in or about March 2012, in the State and District of Minnesota and elsewhere, the defendants,

**ALIREZA JALALI** and
**NEGAR GHODSKANI,**
a/k/a Negar Kani,

did, and attempted to, fraudulently and knowingly receive, conceal, buy, and sell and did, and attempted to knowingly facilitate the transportation, concealment, and sale of merchandise, articles, and objects, knowing that they would be intended for exportation contrary to a law and regulation of the United States, that is Title 50, United States Code, Sections 1705(a) and (c), and Title 31, Code of Federal Regulations, Sections 560.203, 560.204, all in violation of 18 U.S.C. § 554 and § 2.

20

<u>U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.</u>

Specifically defendant **JALALI** and defendant **GHODSKANI** did, aided and abetted, and caused others known and unknown to the Grand Jury to purchase, export, transport, and send from the United States a quantity of Analog Devices after representing that the ultimate country of destination for the Analog Devices was Malaysia, when in fact defendant **JALALI** and defendant **GHODSKANI** knew that the Analog Devices were intended to be sent to Iran. Defendant **JALALI** and defendant **GHODSKANI** also effected the export of the Analog Devices without applying for and obtaining by such application the necessary license and authorization before sending and exporting the Analog Devices from the United States.

## COUNT 4
(False Statement)

On or about February 1, 2011, in the State and District of Minnesota and elsewhere, the defendants,

**ALIREZA JALALI** and
**NEGAR GHODSKANI,**
a/k/a Negar Kani,

in a matter within the jurisdiction of the executive branch of the United States government, specifically the jurisdiction of CBP, BOC, and BIS, and other federal agencies, defendants **ALIREZA JALALI** and defendant **NEGAR GHODSKANI** knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device a material fact, and knowingly and willfully made material false, fictitious, and fraudulent statements and representations, and knowingly and intentionally made and

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

used a false writing and document knowing it to contain materially false, fictitious, and fraudulent statements and entries, in violation of 18 U.S.C. §§ 1001(a), 2(a) and 2(b).

Specifically, on or about February 1, 2011, defendants **ALIREZA JALALI** and **NEGAR GHODSKANI** caused U.S. Company 1 and its agent to represent to CBP, BOC, and BIS, and other federal agencies, through submissions of Electronic Export Information via the Automated Export System, that the ultimate country of destination for a quantity of Converters being exported from the United States was Malaysia, when in fact defendants **ALIREZA JALALI** and **NEGAR GHODSKANI** knew that statement was false.

## COUNT 5
(False Statement)

On or about February 23, 2011, in the State and District of Minnesota and elsewhere, the defendants,

**ALIREZA JALALI** and
**NEGAR GHODSKANI,**
a/k/a Negar Kani,

in a matter within the jurisdiction of the executive branch of the United States government, specifically the jurisdiction of CBP, BOC, and BIS, and other federal agencies, defendants **ALIREZA JALALI** and defendant **NEGAR GHODSKANI** knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device a material fact, and knowingly and willfully made material false, fictitious, and fraudulent statements and representations, and knowingly and intentionally made and

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

used a false writing and document knowing it to contain materially false, fictitious, and fraudulent statements and entries, in violation of 18 U.S.C. §§ 1001(a), 2(a) and 2(b).

Specifically, on or about February 23, 2011, defendants **ALIREZA JALALI** and **NEGAR GHODSKANI** caused U.S. Company 1 and its agent to represent to CBP, BOC, and BIS, and other federal agencies, through submissions of Electronic Export Information via the Automated Export System, that the ultimate country of destination for a quantity of Analog Devices being exported from the United States was Malaysia, when in fact defendants **ALIREZA JALALI** and **NEGAR GHODSKANI** knew that statement was false.

## COUNT 6
(Money Laundering)

On or about January 6, 2011, in the State and District of Minnesota, and elsewhere, the defendants,

**ALIREZA JALALI** and
**NEGAR GHODSKANI,**
a/k/a Negar Kani,

transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, a monetary instrument and fund, specifically a wire transfer in the amount of $13,181.90, to a place in the United States, specifically a bank located in Minnesota, from and through a place outside the United States, specifically a bank located in Malaysia, with the intent to promote the carrying on of a specified unlawful activity, including smuggling in violation of 18 U.S.C. § 554, and violating the regulations

U.S. v. Green Wave Telecommunication, Sdn Bhn, et al.

applicable to trade with Iran, in violation of 50 U.S.C. § 1701-1707, 31 C.F.R. § 560.203 and 560.204, all in violation of 18 U.S.C. § 1956(a)(2)(A) and § 2.

## COUNT 7
(Money Laundering)

On or about January 14, 2011, in the State and District of Minnesota, and elsewhere, the defendants,

**ALIREZA JALALI** and
**NEGAR GHODSKANI,**
a/k/a Negar Kani,

transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, a monetary instrument and fund, specifically a wire transfer in the amount of $38,248.60, to a place in the United States, specifically a bank located in Minnesota, from and through a place outside the United States, specifically a bank located in Malaysia, with the intent to promote the carrying on of a specified unlawful activity, including smuggling in violation of 18 U.S.C. § 554, and violating the regulations applicable to trade with Iran, in violation of 50 U.S.C. § 1701-1707, 31 C.F.R. § 560.203 and 560.204, all in violation of 18 U.S.C. § 1956(a)(2)(A) and § 2.

A TRUE BILL

_____                    _____
UNITED STATES ATTORNEY                                         FOREPERSON

24