UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-329 (JNE/KMM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | PLEA AGREEMENT AND |
| | ) | SENTENCING STIPULATIONS |
| v. | ) | |
| | ) | |
| 2. NEGAR GHODSKANI, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America and Negar Ghodskani (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow.   This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota.   This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.     **Charges**.   The defendant agrees to plead guilty to Count 1 of the Indictment. Count 1 charges the defendant with Conspiracy to Defraud the United States, in violation of Title 18, United States Code Section 371. The government agrees to move to dismiss the remaining counts of the Indictment at the time of sentencing.

The government agrees not to prosecute the defendant for any additional offenses known to the government at the time of the execution of this agreement.   However, all conduct known by the government can and will be used as relevant conduct under the Federal Sentencing Guidelines and as factors under 18 U.S.C. 3553(a) at the defendant's sentencing.

SCANNED
AUG 09 2019
U.S. DISTRICT COURT MPLS

2. **Factual Basis**.  It is stipulated that Count 1 of the Indictment is true and that the defendant is guilty of that charge.  The defendant agrees that the following facts are accurate and that the government has sufficient evidence to prove the following at trial:

Background on Green Wave Telecommunication

Since its incorporation in 2009, defendant Green Wave Telecommunication, Sdn Bhn, ("Green Wave"), a Malaysian company located in Kuala Lumpur, Malaysia operated as a front company for Fanavar Moj Khavar ("Fana Moj"), an Iranian company located in Tehran, Iran.  Members of the conspiracy, including co-conspirator M.R., co-defendant Alireza Jalali ("Jalali"), and others, with some assistance from the defendant, established and operated Green Wave to engage in foreign commerce from Malaysia that would not be possible from Iran because such commerce would violate international sanctions and United States law.  The defendant's role in setting up Green Wave came both at the direction of co-conspirator M.R. and other high-level executives at Fana Moj.

Background on Fana Moj

Fana Moj specializes in both broadcast communications and microwave communications.  It also designs and produces digital video broadcasting equipment and supplies microwave radio systems and wireless broadband access in Iran.  During the scope of her employment at Fana Moj, the defendant understood that Fana Moj's principal customer was the Islamic Republic of Iran Broadcasting ("IRIB").  The IRIB was and is owned by the Government of Iran and operates the main television and radio broadcasting

networks in Iran.

Defendant Ghodskani was a Tehran-based employee of Fana Moj from 2008 until in or about late 2011.   During the period of her employment, defendant Ghodskani was a member of the Commerce Department at Fana Moj.   As described in detail below, beginning as early as August, 2010 and continuing through 2011 (when she left her employment at Fana Moj), defendant Ghodskani falsely represented herself as an employee of Green Wave to U.S. Companies in order to acquire unlawfully sensitive export-controlled technology from the United States on behalf of Fana Moj.

M.R. was nominally the director of Green Wave but officially a Tehran-based employee of Fana Moj during the pendency of the conspiracy.   M.R. also was a member of the Commerce Department at Fana Moj and the supervisor/superior of both defendants Ghodskani and Jalali.

### The Object of the Conspiracy

During the course of the conspiracy of which defendant Ghodskani was a member, defendant Green Wave was used by the defendant, co-defendant Jalali, co-conspirator M.R., and others, to acquire unlawfully sensitive export-controlled technology from the United States on behalf of Fana Moj.   In order to accomplish the acquisition, the members of the conspiracy would conceal the ultimate unlawful destination of the exported technology (Iran) through false statements, unlawful financial transactions, and other means.   When defendant did so, it was based on the specific directions and instructions of

3

co-conspirator M.R. and other employees of Fana Moj.

Relevant Actions of the Defendant

During the course of the conspiracy, Ghodskani would participate in foreign commerce to acquire technology, typically microelectronics, on behalf of Fana Moj. Specifically, Ghodskani would contact producers of the sought-after technology, solicit an agreement to purchase, and negotiate the purchase and delivery of these items with the selling company.  When engaged in these transactions with U.S. companies, defendant Ghodskani would represent herself as an employee of Malaysia-based Green Wave.  To defendant's knowledge, in nearly all cases, the purchased goods would be delivered to Green Wave's office in Malaysia but then re-shipped to Iran.

In order to accomplish the purchase of goods, defendant Jalali, at the direction of both M.R. and Ghodskani, would facilitate the receipt of funds from co-conspirator M.R. and Fana Moj, through a money exchanger, to the bank account of Green Wave held at a Malaysia-based bank. Green Wave would then wire funds from that bank to the selling company.  Defendants Jalali, Ghodskani, and M.R. all understood that this payment system was required because Iran-based Fana Moj, due to economic sanctions imposed by the United States and other countries, could not conduct lawfully the financial transactions required to purchase these goods directly.

4

When the export-controlled technology was received by Green Wave in Malaysia, Jalali repackaged and unlawfully exported the items from Malaysia to Fana Moj in Tehran, Iran.   Ghodskani relayed to Jalali directions she received from M.R., but did not have supervisory authority or control over Jalali.

Defendants Jalali and Ghodskani, co-conspirator M.R., and others knew that virtually all of the items that Green Wave purchased and reshipped to Iran were ordered by co-conspirator M.R. or co-defendant Ghodskani on behalf of Fana Moj and ultimately paid with funds provided by Fana Moj.   Further, Jalali, Ghodskani, and M.R. were aware of the inability of Iranian companies such as Fana Moj in Iran to conduct business transactions in U.S. dollars.   They also were aware that Fana Moj needed to pay for the items it directed Green Wave to purchase using money exchangers located, in among other locations, the United Arab Emirates, in violation of U.S. law.

The investigation revealed several unlawful exports of export-controlled technology from the U.S. Companies to Iran via Green Wave in Malaysia.   Shipping records show that the controlled technology was sent to Green Wave in Malaysia, repackaged, and then shipped to an Iranian company in Tehran.   These shipments include the following:

a.     On February 22, 2011, TNT shipped 47 converters (item number AD9254BCPZ-150) purchased from Minnesota-based U.S. Company 1 by Green Wave, to Fana Moj in Iran.

   b.   On August 25, 2011, TNT shipped 40 synthesizers (item number HMC698LP5E) purchased from Massachusetts-based U.S. Company 2 by Green Wave, to Fana Moj in Iran.

   c.   On August 29, 2011, TNT shipped 110 synthesizers (item number HMC698LP5E) purchased from Massachusetts-based U.S. Company 2 by Green Wave, to Fana Moj in Iran.

   3.   **Statutory Penalties**.   The parties agree and the defendant understands that Count 1 of the Indictment carries statutory maximum statutory penalty of:

   a.   a maximum of five (5) years' imprisonment;

   b.   a fine of up to $250,000;

   c.   a supervised release term of three years; and

   d.   a mandatory special assessment of $100.

   4.   **Revocation of Supervised Release**.   The defendant understands that if she were to violate any condition of supervised release, she could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

   5.   **Waiver of Pretrial Motions**.   The defendant understands and agrees that she has certain rights to file pre-trial motions in this case.   As part of this plea agreement,

6

and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions in this case.

6.     **Guideline Calculations**.   The defendant will be sentenced in accordance with the Federal Sentencing Act, 18 U.S.C. § 3551, *et seq.*, in light of the Supreme Court's decision in *United States v. Booker*, which makes the Guidelines advisory but also requires the Court to consider the Guidelines range in determining the appropriate sentence.   The defendant understands that the proper application of those Guidelines is a matter solely within the discretion of the Court.   The parties understand that the parties' Guidelines analysis is not binding on the Court and that, if the Court does not accept the parties' Guidelines analysis, neither party is permitted to withdraw from the plea agreement.

The parties have not reached an agreement as to a recommended sentence, and each party is free to argue for any sentence it deems appropriate.   The parties do agree that the applicable Guidelines range and analysis is as follows:

### Count 1

a.     Base Offense Level.   The parties agree that the base offense level for Count 1 of the Indictment is **26**.   U.S.S.G. § 2M5.1(a)(1).

b.     Acceptance of Responsibility.   The  government  agrees  to recommend that the defendant receive a **3-level reduction** for acceptance of responsibility and to make any appropriate motions to the Court.   However, the defendant understands and agrees that this recommendation is conditioned upon the following: (i) the defendant testifies truthfully during the change of plea hearing, (ii) the defendant cooperates with the Probation Office in the pre-sentence investigation,

and (iii) the defendant commits no further acts inconsistent with acceptance of responsibility. (U.S.S.G. § 3E1.1). The parties agree that no other Chapter 3 adjustments apply.

c.  <u>Criminal History Category</u>.  Based on information available at this time, the parties believe that the defendant's criminal history category is I.  This does not constitute a stipulation, but a belief based on an assessment of the information currently known.  The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.  The defendant is in the best position to know her own criminal history.  If the defendant's criminal history category, as finally computed with the aid of the Presentence Report, is other than category I, the parties may not withdraw from this agreement based upon that ground.

d.  <u>Guideline Range</u>.  If the offense level is 23 and the criminal history category is I, the Sentencing Guidelines range is 46-57 months' imprisonment.

e.  <u>Fine Range</u>.  If the adjusted offense level is 23, the fine range is $20,000.00 to $200,000.00. (U.S.S.G. § 5E1.2).

f.  <u>Supervised Release</u>.  The Sentencing Guidelines recommend a term of supervised release of 1 year to 3 years.  (U.S.S.G. § 5D1.2(a).

8.  **Discretion of the Court**.  The foregoing stipulations are binding on the parties, but do not bind the Court.  The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category.  The Court may also depart from the applicable guidelines.  If the Court determines the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw

from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9.     **Special Assessment**.   The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted.   U.S.S.G. § 5E1.3.   The defendant understands the $100.00 special assessment is due and payable at the time of sentencing.

10.     **Waiver of Right to Trial**.   The defendant understands that by pleading guilty she will waive all rights to a trial on the question of her guilt.   The defendant has discussed these rights with her attorney and hereby enters a knowing, voluntary and intelligent waiver of those rights.

11.     **FOIA Requests**.   The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

12.     **Stipulation to Judicial Order of Removal**

The defendant agrees to the entry of a stipulated judicial order of removal pursuant to Title 8, United States Code, Sections 1228(c)(5) and 1182.   Specifically, the defendant admits that she is a native and citizen of Iran and that she is removable from the United States pursuant to Title 8, United States Code, Section 1182 because she does not possess a valid unexpired immigrant visa, reentry permit, border crossing identified card, or other valid entry document required by law.

## A.   **Voluntary Waiver of Rights**

After consultation with counsel and understanding the legal consequences of doing so, the defendant knowingly and voluntarily waives the right to the notice and hearing provided for in Title 8, United States Code, Section 1228(c)(2) and further waives any and all rights to appeal, reopen, reconsider, or otherwise challenge this stipulated removal order.   The defendant understands and knowingly waives her right to a hearing before an immigration judge or any other authority under the Immigration and Nationality Act ("INA"), on the question of her removability from the United States.   The defendant further understands the rights she would possess in a contested administrative proceeding and waives these rights, including her right to examine the evidence against her, to present evidence on her behalf, and to cross-examine the witnesses presented by the government.

The defendant agrees to waive her rights to any and all forms of relief or protection from removal, deportation, or exclusion under the INA, as amended, and related federal regulations.   These rights include, but are not limited to, the ability to apply for the following forms of relief or protection from removal: asylum; withholding of removal under Title 8, United States Code, Section 1231(b)(3); any protection from removal pursuant to Article 3 of the United Nations Convention Against Torture, including withholding or deferral of removal under Title 8, C.F.R. § 208; cancellation of removal; adjustment of status; registry; *de novo* review of a denial or revocation of temporary protected status (current or future); waivers under Title 8, United States Code, Sections

1182(h) or 1182(i); visa petitions; consular processing; voluntary departure or any other possible relief or protection from removal available under the Constitution, laws or treaty obligations of the United States. As part of this agreement, the defendant specifically acknowledges and states that she has not been persecuted in, and has no present fear of persecution in, Iran on account of her race, religion, nationality, membership in a particular social group, or political opinion. Similarly, the defendant further acknowledges and states that the defendant has not been tortured in, and has no present fear of torture in, Iran.

The defendant hereby requests that an order be issued by this Court for her removal to Iran. The defendant agrees to accept a written order of removal as a final disposition of these proceedings and waives any and all rights to challenge any provision of this agreement in any United States or foreign court or tribunal.

The defendant hereby agrees to make the judicial order of removal a public document, waiving her privacy rights, including her privacy rights under Title 8, C.F.R. § 208.6. At the request of the U.S. Attorney's Office, U.S. Immigration and Customs Enforcement ("ICE") concurs with the government's request for a judicial order of removal. As a result of the above-referenced order, upon the completion of the defendant's criminal proceedings, including any sentence of incarceration and any court-imposed supervision, the defendant shall be removed to Iran.

B.   **Assistance in the Execution of Removal**

The defendant agrees to assist ICE in the execution of her removal. Specifically,

the defendant agrees to assist ICE in the procurement of any travel or other documents necessary for the defendant's removal; to meet with and to cooperate with representatives of the country or countries to which the defendant's removal is directed; and, to execute those forms, applications, or waivers needed to execute or expedite the defendant's removal.  The defendant further understands that her failure or refusal to assist ICE in the execution of her removal shall breach this plea agreement and may subject the defendant to criminal penalties under Title 8, United States Code, § 1253.

C.   **Re-entry and Penalties**

The defendant concedes that the entry of this judicial order of removal renders her permanently inadmissible to the United States.  She agrees that she will not enter, attempt to enter, or transit through the United States without first seeking and obtaining permission to do so from the Secretary of the Department of Homeland Security or other designated representative of the U.S. government.

The Court's failure, for any reason, to enter the judicial order of removal, shall make this plea agreement, and the promises contained herein, null and void.

13.   **Final Resolution**.   It is clearly and fully agreed that the guilty plea pursuant to this agreement is a final resolution upon the issue of guilt.   There will not be a trial or appeal of any kind upon the issue of guilt, regardless of any dispute regarding the application of the sentencing guidelines.   This, along with any agreement signed by the

parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.

Dated: *7 Aug 17*

ERICA H. MACDONALD
United States Attorney

BY: CHARLES J. KOVATS, JR.
Assistant U.S. Attorney

DAVID C. RECKER
Trial Attorney, Department of Justice

I have carefully discussed every part of this plea agreement with my attorney. I understand the terms of this agreement and I voluntarily agree to its terms. My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement.

NEGAR GHODSKANI
Defendant

Dated: *8/9/2017*

ROBERT RICHMAN, Esq.
Attorney for Defendant